UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROSEEN REALTY CORP., <br><br> Defendant. | Case No. 1:17-cv-00484-TNM |

## MEMORANDUM OPINION

In this suit, the Service Employees International Union National Industry Pension Fund and its Trustees (the Fund) seek unpaid pension fund contributions from Roseen Realty Corporation (doing business as the Arnold Walter Nursing Home) under the Employee Retirement Income Security Act. The Fund claims that Arnold Walter owes $29,830.53 in contributions and interest, plus attorney's fees and costs. Arnold Walter asserts that the Fund's calculations for both amounts are unreliable. For the reasons explained below, I find that no genuine dispute exists as to any material fact, and will enter summary judgment for the Fund.

### I. Background

The Fund seeks unpaid contributions from Arnold Walter for a period of seventeen months, from July 2015 through November 2016. Decl. of Kisha Smith, Ex. A, Mot. Summ. J. (Smith Decl.).[1] Arnold Walter is obligated to pay a base rate of contributions pursuant to a

---

[1] The "Contribution Month[s]" used to reach the Fund's final tally are July 2015 through November 2016. *Id.* Although the Fund claims that it seeks monies "[f]or the period of August 2015 through November 2016," Compl. ¶ 26, this is apparently because the due date for each contribution month falls on the 15th day of the following month, resulting in due dates that begin on August 15, 2015. *See* Smith Decl. Ex. A.

1

collective bargaining agreement (CBA), which was renewed by a binding arbitration opinion and award "for the period of March 1, 2012 through June 30, 2018." Compl. ¶ 10.[2] Under the CBA, Arnold Walter must pay 2.75% of eligible employees' gross earnings, Compl. ¶ 11, and submit monthly remittance reports that "contain the names of each covered employee and the number of compensable hours for each employee during the reporting month." Compl. ¶ 15.

On top of the base rate, Arnold Walter must pay (1) interest on delinquent contributions "at the rate of ten percent (10%) per annum," (2) liquidated damages (calculated as the greater of interest owed or "20% of the delinquent contributions,"), and (3) attorney's fees and costs. Compl. Ex. 5 at 8-9. These obligations are spelled out in the Fund's Collections Policy, *id.*, and authorized by the Fund's Agreement and Declaration of Trust (Trust Agreement), Compl. Ex. 4, Sec. 3.2, both of which are explicitly incorporated into the CBA. Compl. Ex. 1, Art. 30, Sec. 30.4 ("The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund . . . and by all resolutions and rules adopted by the Trustees . . . including collection policies, receipt of which is hereby acknowledged."). Under the Collections Policy, attorney's fees must be "assessed . . . at a reasonable hourly rate (which rate shall be no less than the hourly rate charged to the Fund for such services) for all time spent by legal counsel in collection efforts." Compl. Ex. 5 at 8.

---

[2] Though the Fund alleges that Arnold Walter was party to the CBA "[a]t all relevant times," the CBA's terms did not last through November 2016, at least according to the arbitration award. Compl. Ex. 3 at 20 ("The term of the Agreement shall be March 1, 2012, through June 30, 2016"). However, the parties do not dispute Arnold Walter's liability, perhaps because the CBA has been renewed, automatically or otherwise. *See* Compl. Ex. 1 at 28 (the CBA expires on "February 28, 2013, at midnight, and shall be automatically renewed for a period of four (4) years [except in certain circumstances.]"). In any event this fact (though material) is not in genuine dispute.

2

The Employee Retirement Income Security Act (ERISA) "makes a federal obligation of an employer's contractual commitment to contribute to a multiemployer pension fund." *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004). The Fund constitutes a "multiemployer plan." Compl. ¶ 5.

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plans or such agreement.

29 U.S.C. § 1145. If judgment is awarded for a violation of this section, "the court shall award the plan" the exact sort of relief that the Fund seeks in this case: "the unpaid contributions . . . interest on the unpaid contributions . . . liquidated damages . . . reasonable attorney's fees and costs . . . and . . . other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

Arnold Walter also must pay a surcharge to comply with the Pension Protection Act of 2006 (the PPA), which is an amendment to ERISA. Under the PPA, a multiemployer benefit plan that is in "critical status" must "adopt and implement a rehabilitation plan," 29 U.S.C. § 1085(a)(2), and can impose supplemental contributions that are "reasonably necessary to emerge from critical status." *Id.* at § 1085(e)(1). Failure to pay the rehabilitation plan's extra contributions "shall be treated as a delinquent contribution under section 1145 of this title [ERISA] and shall be enforceable as such." *Id.* at § 1085(e)(3)(C)(iv).

The Fund calculates that Arnold Walter owes $29,830.53 in unpaid base and supplemental contributions, along with interest on unpaid amounts and liquidated damages. Mot. Summ. J. 7; Smith Decl. ¶ 28. The Fund reached this total based on the remittance reports that Arnold Walter submitted, taking "the hours reported by the Defendant itself and

3

multipl[ying] it by the base rate for contributions . . . and the rate of supplemental contributions as required by the Fund's Rehabilitation Plan." Mot. Summ. J. 6-7; Smith Decl. ¶ 6. The difference between the amount due and the amount paid is the underpayment, from which interest and liquidated damages can be calculated. Smith Decl. ¶¶ 26-27, Ex. A (dated March 15, 2017); Pl.'s Statement of Mat. Facts Not in Dispute ¶ ("interest [is] calculated through March 15, 2017"). The Fund has submitted a chart detailing the month-by-month totals, in lieu of providing the actual remittance reports and financial records. *Id.* at 8.

The Fund also claims that Arnold Walter owes a total of $11,217.00 in attorney's fees and costs. Decl. of Andrew Lin, Mot. Summ. J. (Lin Decl.) (documenting $6,950.00 in attorney's fees and $510 in costs); Supp. Decl. of Andrew Lin (Supp. Lin Decl.) (documenting $4,267.00 in additional attorney's fees).[3] All told, the Fund asks for summary judgment in the amount of $41,047.53.

In response, Arnold Walter submits an affidavit from one of its attorneys, who asserts that "[t]o the extent Plaintiffs believe required contributions have not been made, the Pension Fund has improperly included . . . certain individuals who have not met the required threshold criteria," because "only employees who have been employed at least ninety (90) days are eligible to have contributions made on their behalf." Decl. of David Jasinksi ¶¶ 6, 10 Def.'s Opp. Mot. Summ. J. The declaration also says that "on a monthly basis, Arnold Walter determines how much it owes in pension fund contributions and creates a remittance report listing the pension fund contribution amounts." *Id.* ¶ 7. "These remittance reports along with payment . . . are then remitted to the Pension Fund." *Id.* ¶ 8. Mr. Jasinski alleges that "Arnold Walter has paid . . . for

---

[3] The total of $11,217 ($6,950 + $4,267) omits the alleged costs of $510 (a $400 filing fee + $110 in service of process fees). *Compare* Supp. Lin. Decl. ¶ 17 *with* Lin Decl. ¶¶ 6-7.

individuals who . . . met the applicable threshold eligibility criteria," *id.* ¶ 9, but that "Plaintiffs' inconsistent calculations of alleged amounts owed have muddied the waters . . . such that determining any actual amounts payable to the Pension Fund has not been possible." *Id.* ¶ 11. Finally, Arnold Walter asserts that in some respects the Fund's attorneys have billed "an excessive and unreasonable amount of time." Opp. 6; *see also* Jasinski Decl. 3.

## II. Legal Standards

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law, and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once this showing has been made, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III. Analysis

The Fund has moved for summary judgment, and Arnold Walter does not dispute liability. Rather, it claims that "genuine issues of material fact persist as to the amount of damages," Opp. 3, and "the Court must significantly adjust down the amount [in attorney's fees] requested." *Id.* at 5-6. I am satisfied that no reasonable jury could find for Arnold Walter on the question of liability, given the Fund's allegations, the governing documents and supporting

5

evidence, and Arnold Walter's failure to dispute the point. For the reasons stated below, I also find that no genuine issue of material fact remains as to the amount requested in either damages or attorney's fees. Accordingly, summary judgment will be entered for the Fund.

### A. The Fund has Adequately Demonstrated the Amount of Damages

To prove the amount of damages, the Fund relies on the affidavit of Ms. Smith, its Contributions Compliance Manager, who "maintain[s] the Fund's records, determine[s] whether participating employers have satisfied their obligations, and assist[s] in efforts to collect delinquent contributions." Smith. Decl. ¶¶ 1-2. Ms. Smith, in turn, lays out her calculation methods in detail, including a step-by-step explanation of the math involved. *Id.* at ¶¶ 21-28. In making these calculations, Ms. Smith relies on "the remittance reports that Defendant provided to the Fund, the contributions that Defendant remitted . . . the dates on which the reports and contributions were received, and the interest and liquidated damages that were assessed on any underpaid or late paid contributions." *Id.* at ¶ 21. In support of her findings, Ms. Smith has attached "[a] spreadsheet detailing the amounts due from the Defendant for the period of August 2015 through November 2016." *Id.* at ¶ 23; *id.* Ex. A.

The Fund's spreadsheet summarizing Arnold Walter's liability on a month-by-month basis is competent and admissible evidence. Federal Rule of Evidence 1006 allows the use of a "summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."

> For a summary of documents to be admissible, [1] the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient; [2] the documents themselves must be admissible; [3] the documents must be made reasonably available for inspection and copying; [4] the summary must be accurate and nonprejudicial; and [5] the witness who prepared the summary should introduce it.

*United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (citing *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C.Cir. 2008) ("a chart must summarize documents so voluminous as to make comprehension difficult and ... inconvenient, although not necessarily literally impossible") (internal quotation marks and citation omitted)). As for the first factor, a full examination of seventeen monthly remittance reports, each of Arnold Walter's checks, and the applicable interest and liquidated damages in each case is not "literally impossible," but would certainly be "difficult" and "inconvenient" for a factfinder. *Hemphill*, 514 F.3d at 1358. Arnold Walter argues that "nowhere does the Pension Fund provide any sort of specific support documenting the gross, monthly payroll numbers used to calculate each month's regular and supplemental contribution amounts." Opp. 4. But this argument betrays Arnold Walter's "misapprehension that the [proponent] must actually introduce the documents on which it bases a summary chart. To the contrary, the point of Rule 1006 is to avoid introducing all the documents." *Hemphill*, 514 F.3d at 1358-59. "As long as a party has laid a foundation for the underlying documents"—as the Fund has done here, describing the underlying documents in detail through a sworn affidavit, Smith Decl. ¶¶ 21-28—"a chart summarizing them can itself be evidence." *Hemphill*, 514 F.3d at 1359.

Arnold Walter does not dispute three of the remaining four requirements, each of which is easily satisfied. The underlying documents would be admissible, *see Fahnbulleh*, 752 F.3d at 478–79 (explaining and applying the business records exception to the rule against hearsay); Smith Decl. ¶¶ 8, 11, 21-28 (discussing the standard creation of these records), they are reasonably available to Arnold Walter (indeed, it presumably retains the pertinent financial records and remittance reports), and the witness who prepared the spreadsheet has introduced it. *See* Smith Decl. ¶ 24.

The only other disputed requirement is that "the summary must be accurate and nonprejudicial." *Fahnbulleh*, 752 F.3d at 479. Arnold Walter disputes the accuracy of the chart by asserting that "only employees who have been employed at least ninety (90) days are eligible to have contributions made on their behalf," and that "[t]o the extent Plaintiffs believe required contributions have not been made, the Pension Fund has improperly included . . . certain individuals who have not met the required threshold criteria." Jasinski Decl. ¶¶ 6, 10. Yet no party disputes that only employees who have lasted for 90 days are eligible for contributions. The only other relevant assertion is that Arnold Walter has correctly calculated the amounts that it owes, summarized that information in remittance reports, and then "paid . . . for individuals who . . . met the applicable threshold eligibility criteria." Jasinski Decl. ¶¶ 7-9. Since we have paid our obligations, Arnold Walter seems to reason, the Fund must have "improperly included . . . certain individuals who have not met the required threshold criteria." *Id.* at ¶ 10.

But if this is so, why does Arnold Walter not dispute the question of liability? And more centrally: what is the evidence for the assertion that Arnold Walter has paid in full, or that the Fund has improperly included new employees? None at all.[4] The absence of evidence is even harder to ignore in this context, because the Fund pulls all of its data from remittance reports that

---

[4] Mr. Jasinski's underlying affidavit fails to satisfy the requirements of Fed. R. Civ. P. 56(c)(4), because he does not assert that his claims are "made on personal knowledge," nor does the affidavit "show that the affiant or declarant is competent to testify on the matters stated." I also note that Mr. Jasinski appeared on behalf of Arnold Walter, and signed the opposition brief. Opp. 6. Although not prohibited in this jurisdiction, serving as both affiant and advocate in the same case is a dubious practice. *See Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 104 (D.D.C. 2007) (as a matter of Massachusetts law, "affidavits provided by attorneys not made on personal knowledge are not considered during the granting of summary judgment."); *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 349 (5th Cir. 1958) ("We consider it a tribute to the high calling of advocacy to say that we think it an unnatural, if not virtually impossible, task for counsel, in his own case, to drop his garments of advocacy and take on the somber garb of an objective fact-stater.").

Arnold Walter itself prepares and submits. If Arnold Walter knew of a remittance report that demonstrated (or even hinted at) inaccuracies in the Fund's math, it could easily produce that evidence. As it is, we have on one hand the Fund's detailed evidence for the calculation process, and the detailed final numbers resulting from that process, while on the other hand we have Arnold Walter's conclusory assertion that it has paid in full, and so the Fund must have improperly included ineligible employees. The Fund has carried its burden to "identify[] those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. For its part, Arnold Walter has wholly failed to set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. With no evidence to challenge the accuracy of the Fund's chart, I conclude that the Fund's spreadsheet is admissible, and indeed the best evidence before me showing the amount of Arnold Walter's liability.

A review of comparable cases shows that similar evidence-free arguments from ERISA employers (undergirded by similar affidavits from the same attorney) have been rejected by other courts. In *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, the district court rejected an accusation that the Fund was only "summarily stat[ing] the amounts they believe are owed" in a spreadsheet, and then "expect[ing] Bristol Manor and the Court to take the alleged amounts owed on their face." 153 F. Supp. 3d 363, 375 (D.D.C. 2016) (alteration in original). The court held that "Rule 1006 allows Plaintiffs to do so. If Bristol Manor believes the summary evidence to be inaccurate, then the burden falls on Bristol Manor to rebut it with affirmative evidence of its own." *Id.* However, Bristol Manor had not "produced a version of Plaintiffs' spreadsheets that Bristol Manor claims is accurate." *Id.* (citing to a "Jasinski Decl. ¶ 12"). With "no admissible evidence contradicting Plaintiffs' spreadsheets,

9

nor any colorable argument calling the spreadsheets' accuracy into doubt," the court concluded that the defendant had failed to "point to specific facts in the record that reveal a genuine issue suitable for trial. *Id.* (citing *Celotex*, 477 U.S. at 324). Because "Plaintiffs' spreadsheets [were] the only admissible evidence offered to show the appropriate total amount of unpaid contributions, interest, and liquidated damages," the court awarded summary judgment in the amount requested. *Id.* at 375–76. Only five months later, in *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Harborview Healthcare Ctr. Inc.*, the district court faced strikingly similar evidence from the Fund, and similar objections from the employer at issue. 191 F. Supp. 3d 13, 19 (D.D.C. 2016). Again undergirded by an affidavit from Mr. Jasinski, the defendant "suggest[ed] that plaintiffs may have erroneously included overtime hours or other ineligible hours (e.g. hours worked by employees who have been employed for fewer than 90 days) in the gross payroll numbers and thus miscalculated the contributions owed by Harborview." *Id.* But the court rejected this argument, noting that the Fund had already provided "both the amounts that the Fund has calculated it is due . . . and a detailed explanation of how those amounts were calculated." *Id.* at 18. The court reasoned:

> [T]he spreadsheets are based on defendant's remittance reports and thus include only "covered" hours. Moreover, the remittance reports were produced by Harborview, so defendant has possession of any evidence that might contradict plaintiffs' evidence and, thus, has the ability to offer its own analysis. Under such circumstances, defendant cannot avoid summary judgment simply by speculating that plaintiffs may have erroneously included ineligible hours without offering any evidentiary support for that contention.

10

*Id.* at 19 (citing *Bristol Manor*, 153 F. Supp. 3d at 375). I adopt the same logic here. Arnold Walter cannot avoid summary judgment by speculating—without evidence—that the Fund may have made a miscalculation.[5]

### B. The Fund's Requested Attorney's Fees Are Reasonable

Arnold Walter's challenge to the amount of attorney's fees also fails. When a judgment is awarded to enforce ERISA Section 515, 29 U.S.C. § 1145, an award of "reasonable attorney's fees and costs of the action, to be paid by the defendant" is mandatory. 29 U.S.C. § 1132(g)(2). The Fund's attorneys seek reimbursement for "39.15 hours of work" for initial case research, filing the complaint, and filing the motion for summary judgment. Reply 13; Lin Decl. ¶ 4. For reviewing the opposition and filing a reply, the firm seeks reimbursement for 21.6 hours. Relying on *Role Models Am., Inc. v. Brownlee*, which also involved the statutory authority to award "reasonable attorney fees," 353 F.3d 962, 968 (D.C. Cir. 2004), Arnold Walter argues that much of the time billed is "duplicative" and "excessive," since more time was spent drafting the complaint than the brief supporting summary judgment, "the summary judgment submissions in this matter are virtually identical in all substantive respects to . . . [other motions] Plaintiffs [have] filed," and the Fund billed "4.0 hours to 'corporate research' in connection with

---

[5] The Defendant makes a fleeting suggestion that the motion for summary judgment was "improvidently filed" because "no discovery has yet been completed." Opp. 1. But Arnold Walter itself joined in a proposal for summary judgment briefing, and did not seek discovery. *See* ECF No. 8. "A party cannot avoid summary judgment under Federal Rule of Civil Procedure 56(d) simply by claiming that it needs more time to discover facts to support its opposition. Rule 56(d) requires a party [to] articulate what facts it hopes to discover and why those facts are needed." *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers, LLC*, 312 F.R.D. 678, 678–79 (D.D.C. 2015). As in *Castle Hill Health Care Providers*, the Defendant here has not "identified what facts [it] hope[s] to learn through discovery or stated why such facts are necessary to oppose Plaintiffs' Motion for Summary Judgment." *Id.* at 679.

determining Defendant's name." Opp. 5-6. But *Role Models* involved a request for 1,085 billed hours, and the requestor "failed to explain why this relatively straightforward case required the efforts of three senior attorneys, each billing at least $400 per hour." 353 F.3d at 972. These amounts are far more reasonable: 60.75 total hours, with an appropriate amount of time spent on each task, and rates of only $75, $195, and $220 per hour. Lin Decl. ¶¶4-5, Ex. A; Supp. Lin Decl. ¶ 12, Ex. A. These rates are significantly lower than the market rate for attorneys of similar experience. Supp. Lin. Decl. ¶ 14. I find that both the hours spent and the billable rates charged are more than reasonable under the circumstances.

## IV. Conclusion

For these reasons, I will grant the Fund's motion for summary judgment, and retain jurisdiction for enforcement. The total award will be for $41,557.53, totaling $29,830.53 in unpaid contributions, interest, and liquidated damages, plus $11,217.00 in attorney's fees, and $510.00 in costs. A separate order will issue.

Dated: April 2, 2018

TREVOR N. MCFADDEN
United States District Judge